IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DERRIAN L. C.,[1]  )
 )
       Plaintiff, )
 )
vs. ) Case No. 17-cv-1323-CJP[2]
 )
COMMISSIONER of SOCIAL )
SECURITY, )
 )
       Defendant. )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in September 2013, initially alleging disability as of September 30, 2002. He later amended his alleged date of onset to November 4, 2015.[3] After holding an evidentiary hearing, ALJ Koren Mueller denied the application on December 21, 2016. (Tr. 19-28). The Appeals Council

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 22.

[3] Plaintiff initially filed for Disability Insurance Benefits (DIB) also, but then amended his alleged onset date to a date after his insurance for DIB ended. He then dismissed his DIB claim. See, Tr. 166, 188.

denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to develop the record by obtaining a consultative physical exam or an opinion from a medical expert regarding plaintiff's physical ability to function in the workplace and whether a cane was medically necessary.

2. The physical RFC assessment was not supported by substantial evidence.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[4] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable

---

[4] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. The standard for disability under both sets of statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work

experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve

experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve

conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Mueller followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB only through September 30, 2003.

The ALJ found that plaintiff had severe impairments of osteoarthritis, diabetes, COPD, and bipolar disorder.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level with the following limitations:

> [He] can only occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. [He] can occasionally kneel, balance, crouch, and crawl. [He] is able to complete simple, routine tasks in a work environment free of fast paced productivity requirements involving simple work related decisions with few work place changes. [He] can occasionally be exposed to concentrated fumes, odors, gases, dusts, and poorly ventilated areas.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was able to do his past work as a room service clerk.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. Because plaintiff's arguments concern only his physical impairments, the Court will omit a discussion of his mental health treatment.

1.  **Agency Forms**

Plaintiff was born in 1962. He was almost 53 years old on the amended alleged date of disability. (Tr. 199). He had worked at various jobs including restaurant cook, laborer, and hotel room service clerk. (Tr. 204).

In October 2013, plaintiff said he was unable to work because of a mental disorder and problems comprehending. He had stopped working in June 2011. (Tr. 203). In November 2013, he said his condition limited his ability to work because of sleepless nights, fear of going out in the dark, comprehension problems, restless legs, and he fantasied all day with his imagination running wild. He spent his days "picking up cans," watching TV, and fantasizing a lot. (Tr. 217-218).

Plaintiff's cousin submitted a report in August 2014, stating that she saw him at least once a week. She reported that plaintiff had mental problems "as if he was hyperactive (ADD) can't stay calm a long time." She noted problem completing tasks, concentrating, understanding, and following instructions. She noted no physical problems. She said plaintiff was able to walk "far (long time)." (Tr. 242). She indicated that plaintiff did not use an assistive device including a walker or cane. (Tr. 243). That same month, plaintiff submitted a report in which he

checked off almost every category on a list of possible problem areas, mental and physical, including walking, standing, sitting, and lifting. He said he could only walk a block. (Tr. 250).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in September 2016. (Tr. 36). Counsel acknowledged that there were no medical opinions from treating doctors. He explained that the amended date of onset (November 4, 2015) was the date that x-rays were done of the hips, knees, and low back showing "various degrees of arthritis." (Tr. 37-38).

Plaintiff testified that he could not work because of difficulty standing, walking, and lifting. He said that he had "evil thoughts." He took hydrocodone for pain in his hips and back. (Tr. 44-45).

Plaintiff testified that he saw an orthopedic doctor at St. Louis University Medical Center ("SLU") in early 2016. He said that doctor told him they would not do a hip replacement. He said the doctor also said that he would need both hips replaced and he would have to "take the pain" as long as he could, or he might eventually end up in a wheelchair. The ALJ noted that there was no record from SLU in early 2016, and plaintiff's counsel said he would get that record and submit it. Plaintiff also testified that he did 6 weeks of physical therapy for his hips at Gateway beginning in December 2015. (Tr. 46-48).

Plaintiff testified that his hips started hurting real bad "years ago." He had not worked since 2002. He had a walker "to help me get around when I can't walk

that good." (Tr. 57-58).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could do plaintiff's past work as a room service clerk. (Tr. 59-61).

AT the end of the hearing, the ALJ asked plaintiff's counsel to get the records from the orthopedist at SLU. (Tr. 62).

Plaintiff's counsel wrote to the ALJ in October 2016 stating that Gateway Regional Hospital had no record of treating plaintiff, and he requested more time to get the records from SLU. (Tr. 295). In November 2016, plaintiff's counsel submitted a statement from SLUCare Physician Group saying they had no records of treating plaintiff. Counsel indicated that the record was now complete. (Tr. 386-387).

### 3. **Medical Records**

Plaintiff received most of his healthcare from Southern Illinois Healthcare Foundation, where he was treated for physical and mental conditions. He was first seen on November 4, 2015. He complained of left hip pain since a fall about 13 years prior, right hip pain for months, chronic low back pain for years, and numbness in his left foot for months. He had a history of depression and bipolar disorder. On exam, motor strength and tone were normal. Movement of all extremities was normal. He had some stiffness of the low back. Gait and station were normal. He had sensory deficit on monofilament testing to the bottom of the left foot. He was referred for physical therapy for his hip and back pain, and for

EMG/nerve conduction study for his neuropathy.   (Tr. 328-331).

X-rays were done on November 4, 2015.   An x-ray of the left hip showed no fracture, dislocation, or bony destruction.   There were mild osteoarthritic changes of the superior lateral femoral acetabular joint.   An x-ray of the right hip showed mild to moderate osteoarthritic changes without evidence of fracture, malalignment, or obstructive process.   An x-ray of the lumbar spine showed degenerative changes throughout the thoracolumbar spine with no evidence of compression deformity.   (Tr. 340-342).

An EMG/nerve conduction study done on December 1, 2015, was normal.   (Tr. 336).

When plaintiff returned to SIHF in January 2016, he was using a cane.   He said he was applying for disability because of his back and hip pain.   On exam, he was ambulating with a cane.   Motor strength and tone were normal.   He had normal movement of all extremities.   It was hard for him to squat.    His gait was irregular.   He had some stiffness of the low back.   Sensory testing was normal.   He was referred to an orthopedist for hip pain.   (Tr. 325-328).

In April 2016, he ambulated with a cane, but his gait and station were described as normal.   He had normal movement of all extremities but had limited range of motion of the left hip.   (Tr. 321-325).   At the last visit in July 2016, he said he had seen the orthopedic referral but "no intervention was offered."   He had "not gone back to orthopedic for consideration of injection of hips."   On exam, he had stiffness of the hip joints, it was hard to squat and he "can not walk without

cane." Sensation was intact. He had some stiffness of the low back. There is a note stating, "patient was called 1240 hour for verification of using the cane for the [sic] walking." (Tr. 318-321).

4. **State Agency Consultant Review**

State agency consultants completed psychiatric review technique assessments (Tr. 66-68, 81-82), but there was no physical RFC assessment done.

5. **Consultative Examinations**

There was a psychological consultative exam (Tr. 301-304), but no physical examination.

## Analysis

Plaintiff first argues that the ALJ failed to develop the record by obtaining a physical consultative physical exam or an opinion from a medical expert regarding plaintiff's physical ability to function in the workplace and whether a cane was medically necessary.

The agency did very little to develop the record regarding plaintiff's physical impairments. There was no physical consultative exam and no physical RFC assessment by a state agency consultant. This left the ALJ to rely on her own interpretation of the x-ray reports.

An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 416.912(b). While that duty is enhanced where plaintiff was pro se at the agency level, it is not eliminated where a claimant had counsel. *Smith v. Apfel*,

231 F.3d 433, 437 (7th Cir. 2000); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)("This duty is enhanced when a claimant appears without counsel....").

Here, it is obvious that the record is lacking as to the effects of plaintiff's physical impairments. No doctor expressed an opinion as to the significance of the x-ray findings, for starters. Defendant argues, correctly, that the assessment of a claimant's RFC is an issue for the Commissioner, and not for a doctor. She is also correct that the ALJ is not required to rely entirely on a doctor's opinion for her RFC assessment. However, those observations do not respond to the critical point here, which is that the ALJ impermissively "played doctor" by deciding for herself the significance of the x-ray results. No doctor opined that the x-ray results would support a finding that plaintiff could do light work. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). Accord, *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018), amended on reh'g (Aug. 30, 2018); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014).

Plaintiff also argues that the ALJ erred in failing to obtain an opinion as to the whether he needed a cane to walk. The Court disagrees.

Weighing the evidence regarding plaintiff's need for a cane does not require the ALJ to draw her own conclusions about the significance of medical findings. The record contains medical evidence about the need for a cane in the form of the office notes from Southern Illinois Healthcare Foundation. Unfortunately, the ALJ failed to analyze most of this evidence, including the doctor's observation at the last

visit that plaintiff "can not walk without cane."  While it is true that an ALJ is not required to discuss every piece of evidence in the record, it is well-established that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it."  *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), collecting cases.

Plaintiff was 54 years old on the date of the ALJ's decision.  If he were limited to sedentary work with no transferrable skills, he would be deemed disabled at that age under the Medical-Vocational Guidelines ("Grids") 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.  Therefore, the determination of whether the medical evidence, including the x-rays and need for a cane, supports a finding that he can do light work is critical.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions."  *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted.  The Court must conclude that ALJ Mueller failed to build the requisite logical bridge here.  Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review."  *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be

determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:  December 21, 2018.

          s/ Clifford J. Proud
          **CLIFFORD J. PROUD**
          **UNITED STATES MAGISTRATE JUDGE**